UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LATIF A. QASSAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-CV-0663-CVE-PJC |
| ) | |
| DAYLIGHT DONUT FLOUR ) | |
| COMPANY, LLC, ) | |
| ) | |
| Defendant. ) | |
| v. ) | |
| ) | |
| AVALON DONUTS INC., ) | |
| ) | |
| Counterclaim Defendant. ) | |

## OPINION AND ORDER

Now before the Court is Counterclaim Defendant Avalon Donuts Inc.'s Motion to Dismiss and Brief in Support (Dkt. # 56). Counterclaim defendant Avalon Donuts Inc. (Avalon Donuts) asks the Court to dismiss defendant Daylight Donut Flour Company, LLC's (Daylight Donut) counterclaims for lack of personal jurisdiction and failure to state a claim. Daylight Donut responds that Avalon Donuts is the alter ego of plaintiff, and the Court has personal jurisdiction over Avalon Donuts because plaintiff consented to jurisdiction by filing his case in this forum.

**I.**

Plaintiff Latif A. Qassas filed this case alleging that he contacted Daylight Donut in 1998 seeking to form a business relationship. Daylight Donut is an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma. Plaintiff claims that he offered to locate international clients for Daylight Donut in exchange for a ten percent commission for all ingredients and equipment purchased by the new client. Dkt. # 2-2, at 2. Plaintiff states that Daylight Donut

accepted his proposal, and he located at least three clients for Daylight Donut in Romania. He claims that defendant did not pay him any commissions after the new stores were opened in Romania. Id  Plaintiff states that he negotiated a new agreement with Daylight Donut in 2006 under which Daylight Donut would pay plaintiff a $20,000 training fee for each new international store and a 20 percent commission for ingredients and equipment sold to new clients. Id. at 2-3.

Plaintiff claims that Daylight Donut initially honored the new agreement, but slowly began to "usurp [his] efforts." Id. at 3. He alleges that Daylight Donut began to send a salaried employee to train new store owners and pay plaintiff half of the training fee, or send a salaried employee to a new store if plaintiff was not immediately available to conduct training and pay him no training fee. Id. at 3. Plaintiff claims that he developed a new method of attracting potential international clients for Daylight Donut, and the method successfully attracted new clients in Romania, Portugal, Australia, China, United Arab Emirates, Egypt, and Great Britain. However, he claims that Daylight Donut refused to pay plaintiff training fees or commissions for the new stores. On August 19, 2009, plaintiff filed this case in Tulsa County District Court alleging claims of breach of contract, fraud, tortious interference with prospective contract, and negligent misrepresentation. Daylight Donut removed the case to federal court on October 8, 2009.[1]

---

[1] The Court notes that defendant improperly removed this case to federal court. Defendant is a citizen of Oklahoma, and it could not remove a case to federal court based on diversity of citizenship. 28 U.S.C. § 1441(b) ("Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."); Lincoln Property Co. v. Roche, 546 U.S. 81, 83-84 (2005). However, this is not a jurisdictional defect in the removal of this case. This Court may not sua sponte remand the case due to this procedural defect with removal and plaintiff has waived any objection to this issue by failing to file a timely motion to remand. Hurley v. Motor Coach Indus., Inc., 222 F.3d 377 (7th Cir. 2000); Korea Exchange Bank, New York Branch v. Trackwise Sales Corp., 66 F.3d 46 (3d Cir. 1995); Durbin v. Yellow Transp., 624 F. Supp. 2d 1303 (D. Kan. 2009).

Daylight Donut filed counterclaims against plaintiff for copyright infringement, false designation or origin and false description, cyberpiracy, trademark infringement, common-law trademark infringement, unfair competition, deceptive trade practices, fraud, constructive fraud, deceit, malicious interference with contractual relations, tortious interference with prospective advantage, unjust enrichment, and breach of contract. Dkt. # 10. Daylight Donut filed amended counterclaims realleging the same factual allegations and counterclaims, but adding Avalon Donuts as a counterclaim defendant. Daylight Donut states that plaintiff misrepresents the scope of his business relationship with Daylight Donuts, and that he was granted a limited license to work as a broker for Daylight Donut in Portugal and Australia only. Dkt. # 34, at 3-4. Daylight Donut denies that it gave plaintiff an unlimited license to solicit new business for Daylight Donut in all foreign markets. Id. at 4. Daylight Donut alleges that plaintiff used information gathered from his dealings with Daylight Donut, and set up a competing business, Avalon Donuts. Daylight Donut also asserts that Avalon Donuts has posted copyrighted information on its website and has misused Daylight Donut's registered trademarks.

The amended counterclaims include allegations that the Court has personal jurisdiction over Avalon Donuts. Avalon Donuts is a Texas corporation. Daylight Donut alleges that the Court has personal jurisdiction over plaintiff and plaintiff was acting as Avalon Donuts' alter ego when he visited Oklahoma to meet with Daylight Donut. Daylight Donut also states that plaintiff and Avalon Donuts engaged in actions "intentionally aimed at and felt in Tulsa, Oklahoma by Daylight [Donut]." Dkt. # 34, at 2.

## II.

Avalon Donuts argues that defendant's counterclaims against it should be dismissed for lack of personal jurisdiction, because Avalon Donuts is a Texas corporation and defendant's generic jurisdictional allegations are insufficient to establish that the Court has personal jurisdiction over it. Avalon Donuts argues that the Court must consider only the factual allegations of the amended counterclaims when reviewing its motion, but should disregard defendant's allegation that Avalon Donuts is the alter ego of plaintiff because this is not a well-pleaded allegation under Twombly. Defendant responds that Avalon Donuts has waived any defense based on lack of personal jurisdiction by its litigation conduct and the Court has specific personal jurisdiction over Avalon Donuts.

Contrary to plaintiff's argument, the standard of review for a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) are not identical. Defendant bears the burden of establishing that the Court has personal jurisdiction over counterclaim defendant Avalon Donuts. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . [Daylight Donut] need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. (citations omitted). "[Daylight Donut] may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over [Avalon Donuts]." Id. at 1091. "In order to defeat [Daylight Donut's] prima facie showing of jurisdiction, [Avalon Donuts] must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id.

(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The allegations of the counterclaims must be accepted at true to the extent they are uncontroverted by Avalon Donut's affidavits or other written evidence. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in Daylight Donut's favor and a prima facie showing of personal jurisdiction is sufficient to overcome Avalon Donuts' motion to dismiss. Id.

To demonstrate the existence of personal jurisdiction over a nonresident counterclaim defendant in a diversity action, Daylight Donut must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. See OKLA. STAT. tit. 12, § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident [counterclaim] defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 835 (Okla. 2004) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident [counterclaim] defendant 'so long as there exist minimum contacts between the [counterclaim] defendant and the forum State.'" Intercon, 205 F.3d at 1247 (quoting World-Wide Volkswagen, 444 U.S. at 291). The existence of

5

such minimum contacts must be shown to support the exercise of either general jurisdiction or specific jurisdiction. A court "may, consistent with due process, assert specific jurisdiction over a nonresident [counterclaim] defendant 'if the [counterclaim] defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Intercon, 205 F.3d at 1247 (quoting Burger King, 471 U.S. at 472). "When a [counterclaim] plaintiff's cause of action does not arise directly from a [counterclaim] defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the [counterclaim] defendant based on the [counterclaim] defendant's business contacts with the forum state." Intercon, 205 F.3d at 1247 (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)).

Defendant argues that Avalon Donuts waived the defense of lack of personal jurisdiction through its litigation conduct, and the Court should not consider this defense. Defendant states that Avalon Donuts filed a corporate disclosure statement (Dkt. # 47) and participated in the preparation of a joint status report (Dkt. # 45) concerning the status of the parties' settlement negotiations. Defendant also claims that Avalon Donuts has engaged in discovery by serving discovery requests on defendant and responding to defendant's discovery requests. Dkt. # 60, at 8. However, this conduct is not sufficient to show that Avalon Donuts waived a defense of lack of personal jurisdiction or consented to the jurisdiction of the Court. While it is possible to waive an objection to personal jurisdiction through litigation conduct, the cases cited by defendant show that the conduct must be substantial and a key factor is whether the party seeking dismissal has sought affirmative relief from the court. Hamilton v. Atlas Turner, Inc., 197 F.3d 58 (2d Cir. 1999) (defendant impliedly consented to personal jurisdiction of court by waiting four years after filing

6

answer to file motion to dismiss and participating in extensive pretrial discovery); Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435 (3d Cir. 1999) (defendant waived right to contest court's personal jurisdiction by filing motion for summary judgment on its counterclaim before seeking dismissal for lack of personal jurisdiction); Continental Bank, N.A. v. Meyer, 10 F.3d 1293 (7th Cir. 1993) (defendant waived defense of lack of personal jurisdiction by participating in pretrial activities for two and a half years before raising this defense); Yeldell v. Tutt, 913 F.2d 533 (8th Cir. 1990) (party waived personal jurisdiction defense by participating in discovery, filing dispositive motions, and participating in trial). Even though Avalon Donuts has participated in some discovery, it raised this defense in its initial defensive pleading and has not sought any other relief from the Court. The Court also notes that filing a corporate disclosure statement should not be considered as an affirmative act showing that a party has consented to personal jurisdiction. This act is required by the local rules of the Court and assists the assigned district court judge in determining if it is necessary to recuse from a case, and it would not be appropriate to treat the filing of a corporate disclosure statement as a waiver of a personal jurisdiction defense.

Avalon Donuts has chosen to rely solely on the allegations of the defendant's counterclaims to challenge the Court's personal jurisdiction over Avalon Donuts, and claims that the Court may not consider any evidence outside of the pleadings submitted by defendant in determining if the Court has personal jurisdiction over Avalon Donuts. Dkt. # 56, 6-8. However, Avalon Donuts cites no legal authority to support this assertion. It also asks the Court to consider statements in its brief contradicting the factual allegations of the amended counterclaims as a basis to dismiss the

counterclaims for lack of personal jurisdiction.[2] The Court finds that it may consider affidavits or other written evidence offered by defendant to determine if defendant has made a prima facie showing that the Court has personal jurisdiction over Avalon Donuts. Rusakiewicz v. Lowe, 556 F.3d 1095, 1101 (10th Cir. 2009); Melea, Ltd. v. Jawer SA, 511 F.3d 1060, 1065 (10th Cir. 2007). However, even if the Court declined to consider defendant's affidavits and other evidence, the record is clear that the Court has personal jurisdiction over Avalon Donuts.

Defendant's amended counterclaims allege that plaintiff "was acting as Avalon [Donuts'] alter ego when he came to Oklahoma misrepresenting his intentions and gaining information, which Avalon [Donuts] and Plaintiff then used to perpetrate the actions" alleged in the amended counterclaims. Dkt. # 34. As a general rule, an individual and a corporation owned by that individual are separate and distinct legal entities. Carter v. Schuster, 227 P.3d 149, 154 (Okla. 2009); Fanning v. Brown, 85 P.3d 841, 846-47 (Okla. 2004). Oklahoma law permits a court to disregard the corporate entity and pierce the corporate veil if the corporation is used "(1) to defeat public convenience, (2) justify wrong, (3) to perpetrate fraud whether actual or implied, or (4) to defend crime." King v. Modern Music Co., 33 P.3d 947, 952 (Okla. Civ. App. 2001) (quoting In re Estate of Rahill, 827 P.2d 896, 897 (Okla. Civ. App. 1991)). If a corporation is used for any of these improper purposes, a court may disregard the corporate entity and impute liability to the persons responsible for the acts of the corporation. Id. The Tenth Circuit has determined that a corporation may be deemed the alter ego of an individual as a matter of Oklahoma law if "(1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not kept separate

---

[2] Statements appearing only in a brief that are not supported by reference to the pleadings or other evidence are not part of the record and the Court may not consider such statements when ruling on Avalon Donuts' motion to dismiss. See LCvR 7.2(j).

from individual finances, individual obligations are paid by the corporation or vice versa, (4) corporate formalities are not followed, or (5) the corporation is merely a sham." Home-Stake Prod. Co. v. Talon Petroleum, C.A., 907 F.2d 1012, 1018 (10th Cir. 1990).

The Court finds that defendant has adequately alleged that Avalon Donuts is the alter ego of plaintiff, and this should be treated as a well-pleaded allegation of the amended counterclaims for the Court's review of Avalon Donuts' motion to dismiss. In addition to specifically alleging that Avalon Donuts is the alter ego of plaintiff, the amended counterclaims include the following factual allegations:

17. In approximately 2006, [plaintiff] approached Daylight [Donut] to enter into an international business relationship with Daylight [Donut]. [Plaintiff] proposed that he would work essentially as a limited international business broker on behalf of Daylight [Donut], finding potential international licensees, putting them in contact with Daylight [Donut], and assisting the international licensees with the initiation of their operation.

30. Upon Daylight [Donut's] information and belief, Plaintiff and/or Avalon [Donuts] own and operated a website for Avalon Donuts.

31. Upon information and belief, Plaintiff and/or Avalon [Donuts] have copied or authorized copying of large and substantial portions of protectible expression from Daylight [Donut's] Website text, without Daylight [Donut's] knowledge or authorization.

32. Upon information and belief, Plaintiff and/or Avalon [Donuts] have made those portions available on Avalon [Donuts'] Website, also without Daylight [Donut's] knowledge or authorization. As a result, Plaintiff and/or Avalon [Donuts'] have publicly distributed or authorized public distribution of large and substantial portions of protectible expression from Daylight [Donut's] Website.

71. Plaintiff and/or Avalon [Donuts] knowingly made false representations to Daylight [Donut's] prejudice, including but not limited to claims made on Avalon [Donuts'] Website regarding their products and ownership program.

> 72. Plaintiff, acting in his individual capacity and/or as an agent of Avalon [Donuts], also made false statements about Daylight [Donut] to Daylight [Donut's] existing and potential licensees.
>
> 107. Plaintiff willfully and knowingly deceived Daylight [Donut] by representing to Daylight [Donut] that he was following Daylight [Donut's] business model, when in fact plaintiff was making material false representations to both Daylight [Donut] and potential licensees of Daylight [Donut], thereby inducing Daylight to alter its position to its detriment. In perpetrating these actions Plaintiff acted in his individual capacity and/or as an agent of Avalon [Donuts].

Dkt. # 34, at 3-4, 5-6, 12, 17. These allegations support an inference that plaintiff contacted Daylight Donut with the intent to learn confidential business information and use this confidential information to form a competing business, Avalon Donuts. As noted above, it may be appropriate for a court to disregard the corporate entity when the entity was formed to perpetrate fraud. See King, 33 P.3d at 952. Defendant's amended counterclaims sufficiently allege facts supporting defendant's claim that Avalon Donuts is the alter ego of plaintiff, and the Court will treat this as a well-pleaded allegation of defendant's amended counterclaims.

Based on defendant's allegation that Avalon Donuts is the alter ego of plaintiff, it is clear that the Court has personal jurisdiction over Avalon Donuts. Plaintiff consented to the jurisdiction of the Court by filing his lawsuit and his consent may be imputed to Avalon Donuts for the purpose of establishing the Court's personal jurisdiction over Avalon Donuts. See Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 362 (6th Cir. 2008); Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640, 653 (5th Cir. 2002). Even if this were not sufficient to establish the Court's personal jurisdiction over Avalon Donuts, defendant has alleged facts in its amended counterclaims and provided affidavits supporting this Court's exercise of specific personal jurisdiction over Avalon Donuts. Defendant states that plaintiff approached Daylight Donut, an

Oklahoma corporation, seeking to form a business relationship and that plaintiff made numerous personal visits and phone calls to Tulsa, Oklahoma in furtherance of his proposal. Dkt. # 60, Ex. 5, at 1-2. The parties agree that plaintiff and defendant had a business relationship from at least 2006 to 2008, and there is no dispute that defendant is an Oklahoma corporation with its principal place of business in Tulsa. Dkt. # 2-2, at 2-3; Dkt. # 34, at 3-4. In 2008, plaintiff formed Avalon Donuts and filed for ownership of the domain name "www.daylightdonuts.com.au" without informing Daylight Donut. Dkt. # 34, at 7; Dkt. # 60, Ex. 5, at 2. Defendant alleges that Avalon Donuts operates a website using copyrighted text and registered trademarks of Daylight Donut, and Avalon Donuts used its misleading domain name and the protected information to lure customers away from Daylight Donut. Defendant alleges that the effects of Avalon Donuts' action were "intentionally aimed at and felt in Tulsa, Oklahoma by Daylight." Based on these contacts, Avalon Donuts could reasonably have been expected to be haled into court in Oklahoma for claims arising out of this conduct, and the Court has specific personal jurisdiction over Avalon Donuts.[3] Avalon Donuts allegedly engaged in purposeful acts directed toward or intended to harm an Oklahoma corporation, and it is consistent with traditional notions of fair play and substantial justice to subject Avalon Donuts to personal jurisdiction in Oklahoma. See Rusakiewicz, 556 F.3d at 1102.

---

[3] Neither party addresses the possibility that Avalon Donuts could be subject to general personal jurisdiction in Oklahoma. The Court has reviewed defendant's amended counterclaims, affidavits, and other written evidence, and there is no basis to find that Avalon Donuts' contacts with Oklahoma are so numerous that it could reasonably expect to be haled into court in Oklahoma for any type of claim, and the Court does not have general personal jurisdiction over Avalon Donuts. See OMI Holdings, 149 F.3d at 1091.

### III.

Avalon Donuts argues that defendant has failed to state any claim against it, because defendant not alleged sufficient facts to show that Avalon Donuts is the alter ego of plaintiff. Avalon Donuts' motion to dismiss for failure to state a claim is based solely on its assertion that defendant's alter ego allegation is conclusory and should not be accepted as true. Defendant responds that it has alleged sufficient facts to support its general allegation that Avalon Donuts is plaintiff's alter ego, and it has stated plausible counterclaims against Avalon Donuts.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint or counterclaim provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint or counterclaim must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint [or counterclaim]." Id. at 562. The United States Supreme Court recently held that Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the amended counterclaims as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those

allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

Avalon Donuts' motion to dismiss for failure to state a claim should be denied. The Court has already determined that defendant has alleged non-conclusory allegations in support of its claim that Avalon Donuts is the alter ego of plaintiff. Although Avalon Donuts denies these allegations, Avalon Donuts' denials are not a basis to dismiss defendant's counterclaims. Avalon Donuts has not asserted any other basis to dismiss defendant's counterclaims, and none of the counterclaims against Avalon Donuts should be dismissed under Rule 12(b)(6).

**IT IS THEREFORE ORDERED** that Counterclaim Defendant Avalon Donuts Inc.'s Motion to Dismiss and Brief in Support (Dkt. # 56) is **denied**.

**DATED** this 3rd day of May, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT